FILED
2013 Jan-28  PM 03:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LAJOI NICOLE HALE, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:11-CV-3363-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Lajoi Nicole Hale, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB").  Ms. Hale timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Hale was thirty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision.  (Tr. at 20, 148.)  Her past work experiences include employment as an apprentice drafter, inspector, assembler, cashier, and stocker.  (Tr.

at 19, 67, 206-07.) Ms. Hale claims that she became disabled on July 22, 2008, after undergoing a partial hysterectomy that caused her to have severe and constant headaches. (Tr. at 12, doc. 7 at 2.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Hale meets the insured status for disability benefits through December 31, 2013.  (Tr. at 14.)  He further determined that Ms. Hale has not engaged in substantial gainful activity since the alleged onset of her disability.  (*Id.*)  According to the ALJ, Plaintiff's "headaches/affective mood disorder and arthralgia" are considered "severe" based

on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.*) The ALJ determined that Ms. Hale has the residual functional capacity to perform a full range of work at all exertional levels, but for safety reasons she should not work on ladders, ropes and scaffolds, she should not work on unprotected heights or dangerous machinery, and she should avoid commercial driving. (Tr. at 16.) The ALJ also found that Plaintiff had no limitations on fine manipulations, she should be paid by the hour as opposed to piece/production work, and she should have no contact with the general public and only occasional contact with supervisors and coworkers. (*Id.*) The ALJ found that Plaintiff was capable of working in common sounds, dealing with things as opposed to people, and should essentially work in isolation. (*Id.*)

Based on this RFC, the ALJ found that Ms. Hale is able to perform her past relevant work as a drafter and as an assembler. (Tr. at 20.) The ALJ thus concluded his findings by stating that Plaintiff was not disabled within the meaning of the Social Security Act at any time from her alleged onset date of disability through the date of his decision. (*Id.*)

II.     Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*   "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for

"despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Ms. Hale argues that the ALJ's decision should be reversed and remanded for two reasons. First, she contends that the ALJ improperly found that her headaches were a non-severe impairment. Within this argument is Plaintiff's contention that the ALJ did not properly evaluate her credibility as related to the severity of her headaches. Second, she argues that the ALJ improperly found that she could return to her past relevant work as an assembler and as a drafter.

A.    The ALJ's Determination that Plaintiff's Headaches Constitute a Non-Severe Impairment

As an initial matter, the Court notes that the ALJ's decision is contradictory as to this issue on its face, but that the discrepancy does not effect the substance of the ALJ's holding. The ALJ first stated at step two of the sequential evaluation that Plaintiff had "severe" impairments which included "headaches/affective mood disorder." (Tr. at 14.) However, he went on to find at step four that Plaintiff's

headaches were "non-severe," as follows:

> While the claimant's headache appears to constitute a medically determinable impairment, the undersigned finds they are not of the frequency the claimant has alleged and have not resulted in any more than minimal limitations on her ability to do basic work related activities and is therefore, a "non-severe" impairment (20 CFR 404.1521 and 416.921 and SSR 96-3p).

(Tr. at 18.)  The Commissioner acknowledges that it is not clear whether the ALJ mistakenly stated at step two that the headaches were "severe" or if the ALJ was making a distinction between the headaches/affective mood disorder as being "severe" and the headaches by themselves, which he said were "non-severe." (Compare tr. at 14, no. 3 and tr. at 18.)  In any event, it is clear from the decision as a whole that the ALJ's holding was that Plaintiff's headaches are non-severe, as he states, "[d]iagnosis alone, without evidence establishing impairments of an affected body system, is insufficient to warrant a finding of disability," and devotes several paragraphs within step four of the sequential evaluation to explaining that the medical evidence of record does not support Plaintiff's claim that her headaches are severe enough to be disabling.  (Tr. at 17-19.)

In *Brady v. Heckler*, the Eleventh Circuit laid out the standard for a non-severe impairment, as follows: "An impairment can be considered as not severe only if it is

a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 724 F.2d 914, 920 (11th Cir. 1984). In this case, the ALJ gave two overarching reasons for finding that Plaintiff's headaches were non-severe: 1) Plaintiff's subjective complaints regarding the severity of her headaches, i.e., that she has disabling migraines twice weekly, are unsupported by the medical evidence of record; and 2) other medical evidence of record indicates that Plaintiff's headaches result in only a minimal limitation on her ability to work.

### 1.    The ALJ's Adverse Credibility Determination

It is by now axiomatic that disability benefits may not be paid solely on the basis of a claimant's own self-serving complaints. 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(I) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain and other symptoms shall not alone be conclusive evidence of disability."). However, a claimant's subjective testimony of pain and other symptoms may support a finding of disability if it is supported by medical evidence that satisfies the Eleventh Circuit's "pain standard," and if it is not discredited by the ALJ. *See Foote v. Chater*, 67 F.3d

1553, 1561 (11th Cir. 1995) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). To satisfy the pain standard, a claimant must show "evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that it can reasonably be expected to give rise to the alleged pain." *Id.* at 1560; *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the ALJ discredits the claimant's subjective testimony of pain and other symptoms, he must articulate explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). "Although [the Eleventh Circuit] does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562).

Here, the ALJ found that Plaintiff's medically determinable impairments, which included her headaches, could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning "the intensity, persistence and limiting

effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 17-18.) Specifically, the ALJ found that Plaintiff's testimony regarding the severity of her headaches was not supported by the medical evidence of record, and that in fact, there was no objective medical evidence that she has any condition that could cause her headaches. (Tr. at 17.)   To support this conclusion the ALJ noted, for example, that Plaintiff had undergone exhaustive diagnostic evaluations for headaches including a magnetic resonance image (MRI) and a magnetic resonance angiography (MRA) of the brain, but that both were normal. (Tr. at 17, 291-92, 294.)   The ALJ also found important the fact that Plaintiff neither sought nor received any further treatment by a neurologist after her MRI and MRA, and that she has never been hospitalized for headaches. (Tr. at 17.) In response, Plaintiff argues that it is unreasonable for the ALJ to rely on these imaging tests of the head when her headaches were not triggered by a head injury but were instead caused by a partial hysterectomy.  Plaintiff provides no support, medically-based or otherwise, for her assertion that a physician should not rely on a brain scan in an effort to discover the cause of a headache, and the Court can find none.  *See Reeves v. Astrue*, 238 F. App'x 507, 514 (11th Cir. 2007) (holding that the ALJ did not err in discrediting the claimant's subjective pain testimony as none

of her physicians ever diagnosed her with a medical condition that supported those symptoms).

The ALJ also found Plaintiff's subjective pain testimony to be inconsistent with her own statements about her medical condition.  For example, the ALJ noted that Plaintiff reported to Dr. Timothy Howard, her family practitioner, on July 12, 2010, that "[s]he does not want to miss a lot of things with her headaches" and that she "feels like she has kind of got things under control."  (Tr. at 17, 628.)  The ALJ also noted that Plaintiff refused to take narcotic pain medicine, saying she was afraid of dependency.  (Tr. at 17-18, 530.)  The ALJ found that it was reasonable to presume that if Plaintiff was in as much pain-causing disabling conditions as she alleged, she would use pain medication under the supervision of a physician.  (Tr. at 17.)  In response, Plaintiff says that she does take medication, including Verapamil, Neurontin, Imitrex NS, and Migranal NS.  (Tr. at 331.)  However, the ALJ also pointed to at least one instance where Dr. Howard indicated that she had been out of her Migranal for some time.  (Tr. at 630.)  In *Petteway v. Commissioner*, 353 F. App'x 287, 289 (11th Cir. 2009), the Eleventh Circuit held that substantial evidence supported the ALJ's adverse credibility determination, which was based in part on the claimant's abandonment of his pain medication.

Page 11 of 23

The ALJ also found that Plaintiff's daily activities were inconsistent with the level of severity she complained of with her headaches. (Tr. at 17.) Indeed, Plaintiff reported daily activities such as getting up around 6:30 a.m., getting her daughter ready and driving her to school, and picking her up after school and taking her to extracurricular activities. (Tr. at 532.) Although she stated that she lies down for most of the mornings and afternoons, she said that she also sometimes does light housework, attends church occasionally, attends her daughter's sports activities, and talks to friends on the telephone. (*Id.*) While the ALJ cannot use daily activities alone to ascertain whether a claimant is disabled, the ALJ must consider the entire record, including a claimant's activities, to make a finding on credibility. 20 C.F.R. § 416.929(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities . . . ."). Courts have upheld an ALJ's adverse credibility determination when it was based in part on the claimant's stated ability to take care of her personal needs, including errands, driving, and attending church. *See, e.g., Parks v. Comm'r*, 353 F. App'x 194, 197 (11th Cir. 2009).

Inferences drawn by the ALJ from the evidence are not to be overturned if they are supported by substantial evidence. *Savor v. Shalala*, 868 F. Supp. 1363, 1366 (M.D. Fla. 1994). Indeed, this Court "may not decide facts anew, reweigh the

evidence, or substitute [its] judgment for that of the Commissioner." *Dyer*, 395 F.3d at 1210. Here, the ALJ more than adequately explained his reasons for rejecting Plaintiff's complaints regarding the severity of her headaches, sufficient to satisfy this Court that his adverse credibility determination is supported by substantial evidence. *See Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (noting that the "ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so").

> 2.   Other Medical Evidence Cited by the ALJ that the Headaches Had Only a Minimal Effect on Plaintiff's Ability to Work

Aside from finding Plaintiff not totally credible, the ALJ went on to describe three additional medical reasons for finding that her headaches are non-severe: 1) her condition was controllable with medication; 2) the medical records did not identify any limitations in her body systems; and 3) examinations and test results after diagnosis and medication showed no marked abnormalities. (Tr. at 18.) Plaintiff finds fault with each of these reasons, and each will be addressed in turn.

The ALJ's statement that Plaintiff's condition was controllable with medication is supported by the extensive treatment notes and other medical evidence of record in this case. (Tr. at 304-308, 320-339, 343-474, 668-669.) Plaintiff even indicated that her medication was helping on August 3, 2010, during a visit to Crowne

Comprehensive Headache Center. (Tr. at 669.) Courts routinely uphold an ALJ's discrediting of a claimant's claims of the severity of symptoms by the fact that an impairment is controllable with medication. *See, e.g., May v. Comm'r*, 226 F. App'x 955, 958 (11th Cir. 2007), *Parks,* 353 F. App'x at 197. In challenging this reason, Plaintiff points out that on January 28, 2010, Dr. McNeill of Vanderbilt Medical Center described her as an individual with "intractable migraines who has failed the therapies that we currently have to offer her" and further stated, "[g]iven her disabling headaches, we feel that a referral to a headache center is medically necessary." (Tr. at 666.) This one instance that Plaintiff cites does not persuade the Court that the ALJ's conclusion that her headaches were controllable with medication is not supported by substantial evidence. "There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer*, 395 F.3d at 1211 (quoting *Foote,* 67 F.3d at 1561). Indeed, as the fact-finder, the ALJ is entitled to weigh the evidence and ultimately reject portions of the record that are inconsistent with the other evidence. *See* 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which

there are any conflicts between your statements and the rest of the evidence. . .");
*Wheeler*, 784 F.2d at 1075.

The ALJ also concluded that the medical records did not identify any limitations in Plaintiff's body systems caused by headaches, and that she had no marked abnormalities. (Tr. at 17.) As stated previously, an MRI and MRA of the brain were negative for any diagnostic abnormality. (Tr. at 17, 291-92, 294.) Plaintiff argues that the fact that her headaches became severe and constant after she underwent a partial hysterectomy on July 21, 2008, means that she did have limitations in her body systems. She also argues that treatment notes by various doctors prove that her headaches affected her neurological systems. The evidence she points to is as follows: Dr. Dolhun, a neurologist at Vanderbilt Medical Center, noted on December 3, 2008 that she has tenderness in her bilateral greater occipital nerves (tr. at 335); Dr. Howard stated on July 31, 2009 that she "does appear to be in pain very slow moving," that she is sensitive to light and sound, and he assessed her with having a "migraine headache" (tr. at 641); and Dr. Phillips, a rheumatologist, noted that she has "some tenderness in the temporal areas bilaterally . . . there is mild tenderness in the occipital areas" and opined that she suffered from headaches, although he had no explanation for them. (Tr. at 646-47.) Plaintiff's emphasis on the

fact that several of her doctors opined that she suffered from headaches is misplaced because a "diagnosis or mere showing of a deviation from purely medical standards of bodily perfection or normality" is not sufficient to establish that Plaintiff is disabled; instead, Plaintiff must show the effect of the impairment on her ability to work. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

Plaintiff also points to additional evidence that she says shows that her headaches are disabling. For example, she argues that her headaches have more than a minimal effect on her ability to work because on September 5, 2008, her family practitioner, Dr. Howard, gave her a certification for an absence from work for an unspecified amount of time due to a medical emergency consisting of migraine headaches. (Tr. at 428.) However, the ALJ specifically stated that he gave little weight to Dr. Howard's opinion because the objective medical evidence did not support it. (Tr. at 19.) Although Plaintiff does not specifically challenge the weight the ALJ gave to Dr. Howard's opinion on appeal, the ALJ's decision on this point is not at odds with applicable law. A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004)

(quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).  In this case, the ALJ articulated "good cause" for not accepting Dr. Howard's conclusions, as follows: 1) the medical evidence does not support it; 2) there is no indication that Dr. Howard is capable of predicting Plaintiff's future limitations; and 3) there is no indication that Dr. Howard ever noted any work limitations in the rest of his extensive records. (Tr. at 19.)  Importantly, the regulations provide that an opinion as to whether a claimant is disabled or unable to work is reserved to the Commissioner, is not considered a medical opinion and is not given any special significance, even if offered by a treating source.  20 C.F.R. §§ 404.1527(d), 416.927(d).  Thus, there is substantial evidence in the record as a whole to support the Commissioner's finding of good cause to discount Dr. Howard's

opinion that Plaintiff needed to be absent from work indefinitely.

Plaintiff also emphasizes that on August 8, 2008, Dr. Howard stated that she has dull headaches and mentation, and "a lot of psychomotor retardation" (tr. at 351, 428), and that on October 28, 2009, Dr. McDonald, a psychologist, opined that while she appears "capable of understanding, carrying out, and remembering instructions when she is not in severe pain [and] . . . capable of interacting appropriately with others when she in not in pain," that "she appears to be in pain more often than not." (Tr. at 533.)  While it does not appear that the ALJ specifically addressed these treatment notes in his decision, again, he is not required to address every piece of evidence. *Dyer*, 395 F.3d at 1211.  Further, the Eleventh Circuit has held that it is not inconsistent for an ALJ to find that a plaintiff suffers pain in fact and yet is not so severely impaired as to meet the stringent test for disability imposed by the Act. *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984).  Thus, despite the fact that several of Plaintiff's doctors noted that she was in pain, there is substantial evidence to support the ALJ's conclusion that the Plaintiff's medical history and treatment records do not support Plaintiff's subjective complaints of disabling pain. (Tr. at 20.)

This Court may not re-weigh evidence or substitute its own judgment for that of the Commissioner, but rather, must give deference to the Commissioner's decision

if substantial evidence supports it. *Dyer*, 395 F.3d at 1212. Given that the ALJ looked to the entirety of the record and cited specific reasons for his conclusion that Plaintiff's headaches were not severe, including discrediting Plaintiff's subjective pain testimony as unsupported by the evidence and noting the considerable medical evidence of record indicating that the headaches would have only a minimal effect on her ability to work, this Court finds that the ALJ's consideration of Plaintiff's headaches is supported by substantial evidence.

B.    The ALJ's Determination that Plaintiff Could Return to Her Past Relevant Work as a Drafter and as an Assembler

At Plaintiff's hearing, the ALJ asked the VE to identify Plaintiff's past relevant work, and she stated that Plaintiff had worked as an apprentice drafter, an inspector, an assembler, a cashier, and a stocker. (Tr. at 67.) The two past relevant jobs that are at issue here are that of an "apprentice mapper/clerk" at the Madison County Tax Assessor's office, in which Plaintiff input information from deeds into a mapping program, and in which Plaintiff says there was "constant people contact" (tr. at 207), and that of an assembler, where Plaintiff put together computer boards using a soldering process. (Tr. at 206.)

With regard to the drafter job, the ALJ asked the VE whether a hypothetical individual with Plaintiff's RFC could perform it, to which the VE replied that

although Plaintiff could not perform the job "as she performed it," "there would be other drafting jobs that would be available." (Tr. at 72.)  The VE went on to explain that drafting jobs for a land surveyor or an engineering company would allow for an isolated work station as contemplated in Plaintiff's RFC. (*Id.*)  When questioned further by Plaintiff's counsel, the VE continued, "It's not the same job, but its very similar.  There's not a whole lot of difference between drafting jobs." (Tr. at 73.)  Based on the VE's testimony, the ALJ stated in his decision that Plaintiff is capable of performing her past work as a drafter, and he specifically noted that the VE testified that Plaintiff is unable to perform her past work as a drafter as previously performed but could perform work as an apprentice drafter. (Tr. at 20.)

Plaintiff now argues that the VE was not identifying Plaintiff's past relevant work, but was improperly identifying a totally different job to which she believed any learned skills would transfer.  However, Plaintiff's argument fails because the Eleventh Circuit has held that at step four of the sequential evaluation, the claimant must show not only that she cannot perform her specific past job, but also that she is unable to perform her past kind of work. *See Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986).  This rule is also expressed in the policy statement found in Social Security Ruling (SSR) 82-61: "a claimant will be found to be 'not disabled' when it

is determined that he or she retains the RFC to perform: 1. The actual functional demands and jobs duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." In other words, it is the kind of job, and not a specific job, that is relevant. Here, the VE was clear that the drafter job she was identifying as available for Plaintiff to perform was not the same job, which was an apprentice drafter at the Madison County Tax Assessor's office, but that it was a very similar drafter job that would account for an isolated work station. (Tr. at 73.)

Although Plaintiff attempts to distinguish *Jackson*, it is in fact on all fours with the present case. In that case the issue was whether or not the claimant could perform his prior work if there were no steps he would have to climb and if the work as performed elsewhere in the regional or national economy did not require the climbing of steps. 801 F.2d at 1294. Here, the issue is whether Plaintiff could perform her prior work as a drafter if she could work in an isolated workspace and if the job as performed elsewhere in the regional or national economy was offered with an isolated work space. The VE specifically testified that she could, and she further stated that drafters for land surveyors or engineering companies were examples of such jobs in the economy that existed in significant numbers. (Tr. at 72.) As such, Plaintiff failed

to meet her burden of showing that she could not perform her past relevant work as a drafter (not as she performed it, but as drafter jobs are generally performed in the national economy). *See Jackson*, 801 F.2d at 1293-94.

With regard to the assembler job, the VE testified that Plaintiff could perform her past work as an assembler. (Tr. at 69 ("And the assembler, I believe would still be available . . .").) The VE also provided an example of a transferable skills job of a sub-assembler, of which 400 positions existed in Alabama and 40,000 existed in the national economy. (Tr. at 69-70.) Upon further questioning about Plaintiff's past assembler job, the VE testified that the work provided for an isolated workstation as contemplated by Plaintiff's RFC, and further clarified that it was paid by the hour, and not by the fees, as contemplated in Plaintiff's RFC. (Tr. at 73, 75.) Based on this testimony, the ALJ stated in his decision that Plaintiff could perform her past relevant work as an assembler, and/or she could also perform work as a sub-assembler, a job that existed in significant numbers in the economy. (Tr. at 20.) Plaintiff has offered no argument as to why she is unable to perform this job, and substantial evidence supports the ALJ's determination on this point.

IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Hale's

arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this <u>28th</u> day of <u>January 2013</u>.

L. Scott Cougler
UNITED STATES DISTRICT JUDGE
[160704]